THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GORDON SCOTT STROH,

    Plaintiff,

v.

SATURNA CAPITAL CORPORATION,
NICHOLAS KAISER and JANE CARTEN,

    Defendants.

Case No. 2:16-cv-00283-TSZ

**PRETRIAL ORDER**

## Federal Jurisdiction

There is federal jurisdiction in this case because Plaintiff is pursuing two federal statutory claims that have survived motions to dismiss: Plaintiff's Sarbanes-Oxley claim under 18 U.S.C. § 1514A and his Dodd-Frank claim under 15 U.S.C. § 78u-6.

The Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1514A(b)(1)(B), 15 U.S.C. § 7202(b)(1), 15 U.S.C. § 78u-6(h)(1)(B)(i), 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.

Venue is proper under 28 U.S.C. § 1391(c) (1) and (2) because the individual defendants are domiciled in Bellingham, Washington and the corporate defendant maintains its principal place of business in Bellingham.

PRETRIAL ORDER - 1
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

## Claims for Relief

**Plaintiff characterizes the claims that he will pursue at trial as follows:**

1. Plaintiff will pursue Sarbanes-Oxley and Dodd-Frank claims against all three defendants. Plaintiff will seek damages based on lost compensation – back pay and double back pay between his termination and the trial plus front or future pay over the years his whistleblower status will impede his opportunity to gain equivalent employment.

2. Both of Plaintiff's claims are predicated on the same facts. Defendant Kaiser imposed a poor "culture of compliance" or "tone at the top," as the SEC describes management's attitude toward adhering to securities regulations. There are salient examples. Kaiser mocked prosposals by a compliance and risk management consultant. When Kaiser perceived a conflict between securities regulations, he threatened not to comply with either. Kaiser responded angrily to advice from Stroh about employee disciplinary disclosure requirements and compliance with new SEC "pay to play" requirements, leading to his telling Stroh's compliance team to set aside compliance functions and pursue "loopholes" and "arbitrage schemes" instead.

3. Kaiser created the impression of doing due diligence to comply with AML and SAR duties and avoid facilitating terrorist financing but in reality prioritized business development. For example, Kaiser convened a meeting of Saturna's IT staff and directed them to create a computer network on his yacht, in case the FBI confiscated the office computers, in which event the IT staff were not to tell FBI agents about the yacht network. Kaiser threatened to fire the entire IT staff when he learned of their reaction to his directive to lie to the FBI. Kaiser acknowledged that "red flags" appeared in the investigation of a prospective customer's ties to terrorist financing and a U.S. Senate report warned of terrorist financing concerns about a prospective business partner, but Kaiser brushed them aside. Kaiser rejected without even skimming a compliance manual prepared for STC by its president, a veteran trust officer, and then repeatedly ordered the trust officer, Stroh and later a lawyer assisting Stroh to violate

PRETRIAL ORDER - 2
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

attorney rules of professional conduct and state laws regarding authorized practice of law by drafting instruments for customers.

4. Under the leadership of Kaiser and Carten, Saturna engaged in a litany of securities regulatory violations from 2011-2014. These included for years failing to file Outside Business Activity reports on companies that Saturna's star business developer, Monem Salam, had failed to disclose and even attempted to conceal. Carten, despite holding a securities industry supervisor's license, as did Monem Salam, had also failed to file outside business activity reports. Kaiser kept excess cash in a mutual fund in violation of SEC Rule 35d-1 (the "names rule") for years in spite of Stroh's repeatedly urging him to rectify it. Kaiser ignored Stroh's advice on investment advisor "best execution" requirements and investment of customer account funds in a manner inconsistent with objectives. When Stroh reported insider trading by an officer of Saturna and consulted outside counsel, Kaiser berated Stroh and directed him to terminate the engagement immediately. Kaiser again harassed Stroh for consulting outside counsel for an affiliated mutual fund regarding prospectus disclosure of minimum purchase waivers.

5. When he determined that Saturna was violating securities regulations, Stroh advised Kaiser and Carten to take corrective action. Defendants often followed Stroh's advice, but in the process Kaiser usually attacked Stroh's competency, belittled him, threatened Stroh with loss of his job on occasion and continued to harass Stroh. Kaiser was particularly infuriated by Stroh's directives to Monem Salam, Saturna's "MVP," regarding repeated compliance problems. Kaiser's retaliation against Stroh culiminated shortly after a particularly severe scolding of Monem Salam by Stroh and on the same day Salam was obtaining permission for yet another outside business activity, July 16, 2014.

6. On July 15, 2014, Stroh met with Carten, told her how deeply wounded he was by Saturna's refusal to raise his pay for the coming year and that he had other employment options, although he did not. Carten told Stroh to go home and cool off for two days. Stroh had repeatedly expressed concern that he and his team – compliance assistant Jacob Lewis and

PRETRIAL ORDER - 3
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

Saturna Capital Chief Compliance Officer Michael Lewis – were substantially underpaid because of Kaiser's animosity toward compliance. Stewart had interviewed with Frank Russell and Lewis with the SEC, so Stroh was still pushing for an increase in their compensation as well. After he left the office on July 15, Stroh sought a concerted effort by the three, learned that Lewis had been given a pay raise, and asked Lewis to advocate for Stroh. Lewis did, and Carten softened her stance. She and Stroh then began negotiating a raise for Stroh.

7. As the Carten-Stroh negotiation moved toward a midpoint of their respective positions on July 16, but without concluding, Carten invited Stroh to "discuss further" in the morning his onging employment at a higher salary or his working on a temporary basis until a replacement could be obtained. Carten did not tell Stroh that two days earlier she had signed an agreement with a recruiter to replace Stroh or that her last offer to Stroh was for an amount that his replacement would earn. Carten then phoned Kaiser for advice. Kaiser seized the opportunity to intercede, and decided that Carten should bring in "an idependent counsel to help [her] fire her chief legal officer in the morning." Carten followed Kaiser's instructions and had an outside counsel meet Stroh the next moring before he could conclude the negotiation. The outside counsel greeted Stroh with notice that Stroh was no longer employed there because Saturna had accepted his resignation – although Stroh had never tendered it. Stroh begged for his job but was repeatedly rejected by Carten and the outside counsel.

8. Plaintiff objects to application of the "after acquired evidence" defense on any basis for the reasons set forth in his Motion in Limine. Plaintiff asserts that he has standing to bring SOX and Dodd-Frank claims despite his role of providing legal and compliance advice. Defendants mischaracterize protected activity by presuming that it is limited to advice relating to "securities fraud" alone; but protected activity clearly includes advice regarding violations of other federal securities statutes as well as regulations promulgated by the SEC and its self-regulatory organizations such as FINRA. Controlling Ninth Circuit authority and rulings in this case on Defendants' initial motion to dismiss have established Plaintiff's standing and

PRETRIAL ORDER - 4
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

application of his claims to SEC regulations beyond fraudulent securities transactions alone.

**Affirmative Defenses**

Defendants dispute the legal and factual characterizations in Paragraphs 1-8 above.

1. **Defendants will pursue the following affirmative defenses at trial: Failure to State a Claim: SOX, Dodd-Frank, and Wrongful Termination**

Mr. Stroh's First Cause of Action for violation of the Sarbanes-Oxley Act's whistleblower retaliation provisions ("SOX claim") and Second Cause of Action for violation of the Dodd-Frank Act's whistleblower retaliation provisions ("Dodd-Frank claim") both require that Mr. Stroh establish that he suffered some form of adverse employment action, and that the adverse employment action was tied in some manner to a protected activity. These claims fail for lack of proof in the following ways:

   a. **Mr. Stroh Quit and Refused Saturna's Offer to Return.**

The evidence will show that Mr. Stroh quit his job and then refused Saturna's offer to return to work. These facts defeat all three of the claims set forth above.

   b. **Mr. Stroh Did Not Suffer Any Adverse Employment Actions Prior to His Departure from Saturna.**

Plaintiff has advised that he claims only his alleged termination as an adverse employment action for which any damages are sought. However, to the extent the claims set forth above turn on an alleged adverse employment action purportedly suffered by Mr. Stroh prior to his separation from Saturna, the evidence will show that he did not in fact suffer any actionable adverse employment action.

   c. **Mr. Stroh's Separation Was Because of Money, Not Protected Activities.**

The evidence will show that the reason for Mr. Stroh's separation from Saturna – regardless of whether he quit or was terminated – was his desire for additional pay. There was no causal link between any protected activity and the end of Mr. Stroh's employment at Saturna.

PRETRIAL ORDER - 5
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

### d. Many of Mr. Stroh's Actions Do Not Qualify as Protected Activities Under SOX.

Many of Mr. Stroh's allegations regarding Saturna's legal and compliance actions do not relate to alleged violations of the rules and regulations of the SEC in order to support Mr. Stroh's SOX claim, or to his making disclosures that are required or protected under SOX or rules and regulations under the jurisdiction of the SEC, in order to support Mr. Stroh's Dodd-Frank claim.

### e. Mr. Stroh's Reports of Compliance Issues are not Protected Activity Because they do not Step Outside of his Role as Chief Legal Officer.

Because all of Mr. Stroh's actions in raising compliance issues took place as part and parcel of his job as Chief Legal Officer of Saturna Capital Corporation (or his parallel duties with Saturna's affiliate or subsidiary companies) they do not constitute protected activities.

## 2. Saturna Would Have Made the Same Decision Absent Mr. Stroh's Protected Activities.

Saturna accepted Mr. Stroh's resignation. The evidence will show that it would have made the same decision to allow him to resign even in the absence of any protected activity. This defense defeats Mr. Stroh's claims. As noted above, Plaintiff claims only his alleged termination as an adverse employment action for which any damages are sought.

## 3. Mr. Stroh's Claims for Damages Are Foreclosed or Limited.

### a. After-Acquired Evidence Cuts Off Any Damage Claim.

After Mr. Stroh left Saturna, the company's investigation into his work history (including a review of the hard drive of his work computer) revealed evidence of gross insubordination, drug and alcohol use impacting his work performance, pornographic materials, and other materials evidencing an egregious lack of respect for and loyalty to his employer. Saturna also discovered that Mr. Stroh had been convicted of a felony forgery charge, which he had never disclosed to the company or to Saturna's regulators. These facts, alone or in combination, are sufficient to defeat Mr. Stroh's claim for damages.

PRETRIAL ORDER - 6
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

### b. Mr. Stroh Failed to Mitigate or Minimize His Damages.

Mr. Stroh remains unemployed today, nearly three years after his resignation from Saturna. The evidence will show that Mr. Stroh rejected Saturna's offer for him to return at a higher base salary and failed to take reasonable efforts to obtain employment, thereby barring or limiting his claims for damages.

### Admitted Facts

1. Plaintiff Gordon Scott Stroh ("Stroh"), worked at Saturna Capital Corporation from 2006 to 2014. From August 2011 until July 2014, Stroh served as Chief Legal Officer ("CLO") for Saturna Capital and Saturna Trust Company, Chief Compliance Officer ("CCO") for Saturna Brokerage Services and Anti-Money Laundering ("AML") Officer for Saturna Brokerage Services, Amana Mutual Funds Trust and Saturna Investment Trust.

2. Defendant Saturna Capital Corporation ("Saturna") is an investment adviser headquartered in Bellingham, Washington. Saturna carries out certain operations through affiliates, including Saturna Brokerage Services, a securities broker-dealer ("SBS"), Saturna Trust Company ("STC"), Saturna Sendarian Berhad ("SSB"), Amana Mutual Funds Trust ("AMFT") and Saturna Investment Trust ("SIT").

3. Defendant Nicholas Kaiser ("Kaiser") is the founder of Saturna and Chairman of the Board of Directors. Defendant Jane Carten ("Carten"), is Saturna's President and a director of Saturna and several of its affiliates. Carten is Kaiser's daughter.

4. Saturna hired Stroh in 2006.

5. Stroh's employment at Saturna ended in July 2014.

### Issues of Law

The following are the issues of law to be determined by the court (in addition to those issues raised in the parties' respective Motions in Limine):

1. Does Plaintiff have standing to pursue SOX and Dodd-Frank claims when his job included providing legal and compliance advice regarding securities regulations?

PRETRIAL ORDER - 7
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

2. What are the elements and burden of proof of Plaintiff's SOX and Dodd-Frank claims? Which, if any, of those elements fail as a matter of law?

3. What are the elements and burden of proof of any defense(s) to those claims? Which, if any, of those elements fail as a matter of law?

4. Must Mr. Stroh's damages be reduced or eliminated as a matter of law?

### Plaintiffs' Witnesses[1]

**Kenneth R. Cain.** 8896 River Pine Drive, Cordova, TN, 38016. Mr. Cain will testify by pre-recorded, videotaped deposition from the Memphis, Tennessee area. Plaintiff will start the video deposition at the point shown on the transcript as 6:25, the beginning of direct examination, and conclude at 80:11, the conclusion of cross examination. This testimony runs for about an hour.

Prior to Plaintiff's decision to dismiss his state-law claims, Defendants identified the transcript sections to which they object, and the parties have conferred regarding these designations. Plaintiff has agreed to remove certain designations based on those objections and Defendant has withdrawn certain objections. Plaintiff disputes Defendants' remaining objections. A copy of the transcript shows in yellow highlighting the sections that Plaintiff intends to offer at trial with Defendants' remaining objections in red text and Plaintiff's responses correlating to those objections inserted in green boxes. The highlighted transcript of Ken Cain's video testimony is in attached Addendum A.

Mr. Cain, was the president of Saturna Trust Company from its inception in Reno, Nevada, around early 2009 until his retirement in early 2014. He will testify about Kaiser's creation of an atmosphere in which employment was precarious, how STC was established and run, Monem Salam's favor with Kaiser, business development trips Cain made with Monem Salam to mosques around the country, Kaiser's disregard of Cain's compliance efforts and

---

[1] All witness descriptions are characterized by the party offering that witness and are subject to the Court's rulings on the parties' motions in limine.

PRETRIAL ORDER - 8
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

pressure by Kaiser to have Saturna counsel violate RPCs by drafting customer trust instruments.

**Defendant Jane Carten.** C/o counsel for defendants. Rather than submit excerpts from Carten's individual/Saturna Rule 30(b)(6) deposition, Plaintiff will call Carten as a witness in his case to establish facts adverse to Defendants through live witness testimony directly from a Defendant. Carten will be asked about her dealings with Plaintiff, outside business activity reports, Monem Salam, statements by Kaiser about "loopholes and arbitrage schemes," Kaiser's IT staff meeting about FBI agents and a computer system on his yacht and her follow up meeting with Kaiser, Kaiser's yelling at Winship and Stroh and Tom Phillips' frustration with Kaiser before resigning, Kaiser's repeated reduction of compensation Carten was proposing for Stroh and the circumstances leading up to and including Stroh's termination.

**Plaintiff's Expert Mary Curran.** 875 Hilldale Avenue, Berkeley, CA 94708. Curran will be asked about her credentials and opinions in her expert witness report, including subjects described herein regarding the testimony of Defendants Carten and Kaiser. Curran may be asked to comment on the report or testimony of Defendants' expert Sara Andres.

**Defendant Nicholas Kaiser.** C/o counsel for Defendants. Plaintiff will call Kaiser as a witness in Plaintiff's case to establish facts adverse to Defendants through live witness testimony directly from a Defendant rather than through deposition excerpts. Kaiser will be asked about Saturna's "culture of compliance" or "tone at the top," undue influence of Saturna CCOs in reports to fund directors, his dealings with Saturna's CLOs, statements about "loopholes and arbitrage schemes," his IT staff meeting about FBI agents and a computer system on his yacht, AML issues, "red flags" and investigation of terrorist finance concerns to vet customers and business partners, Monem Salam, OBA reports, "names rule" compliance, disclosure of minimum investment waivers in prospectuses, Stroh's consultation of outside counsel regarding those issues and insider trading, Stroh's refusal of Kaiser's directives to draft customer trust instruments in violation of RPCs, harassment of Stroh, repeated reduction of

PRETRIAL ORDER - 9
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

compensation Carten was proposing for Stroh and the circumstances leading up to and including Stroh's termination.

**Paul Meeks.** 606 Clark Road, Bellingham, WA, 98225. Paul Meeks will testify about his inducement to leave a prestigious Merrill Lynch portfolio manager position in the East to become a portfolio manager and media spokesperson at Saturna in 2012, with the understanding that he would replace Kaiser, who was to retire in a few years. Meeks heard Kaiser browbeating Stroh on a number of occasions. Kaiser's management of some accounts did not comply with investment objectives; Kaiser's habitual edits of fund prospectuses could alter the fund theme; Kaiser appeared to be managing some funds to suit his personal objectives and did not take "best execution" duties seriously; Kaiser prevented Meeks from discussing fund management directly with the board of directors, and Kaiser did not want any criticism of management in writing. Monem Salam was an aggressive salesperson, whose questionable conduct was ignored by Carten and Kaiser. Carten engaged in fund management that was impermissible. Kaiser improperly influenced employees' use of the stock buyback program. Kaiser and Carten imposed Meeks' resignation after Meeks saw that Kaiser was not retiring as represented and Kaiser learned that Meeks had made inquiries about other job opportunities.

**Plaintiff's Damages Expert Mark Newton.** 1325 Fourth Avenue, Suite 1705, Seattle, WA, 98101. Newton will quantify damages sustained by Stroh as described in Newton's supplemental expert witness report, which updated his calculations as of January 25, 2017 to the estimated conclusion of trial, June 30, 2017. This will include an offset for mitigation through alternative employment. Newton may be asked to comment on the report or testimony of Defendants' damages expert, Robert Wagner.

**Plaintiff, Gordon Scott Stroh** (c/o Lane Powell PC) – will testify in detail on the facts supporting the claims Plaintiff will pursue at trial, per his deposition and declaration testimony and as summarized in the claims for relief recapped above.

PRETRIAL ORDER - 10
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

## Defendant's Witnesses

A. **Non-Expert Witnesses**

1. **Nicholas F. Kaiser** will testify live. Mr. Kaiser is Saturna's founder, Chairman, and Director. The general nature of his testimony will be Saturna's history and operations; Mr. Stroh's work at Saturna; Saturna management's interactions with Mr. Stroh and other members of Saturna's legal and compliance team; compliance issues (to the extent Mr. Stroh is allowed to present such evidence); Mr. Stroh's resignation from Saturna; and the effect of after-acquired evidence.[2]

2. **Jane K. Carten** will testify live. Ms. Carten is Saturna's President and Director. The general nature of her testimony will be Saturna's history and operations; Mr. Stroh's work at Saturna; Saturna management's interactions with Mr. Stroh and other members of Saturna's legal and compliance team; compliance issues (to the extent Mr. Stroh is allowed to present such evidence); Mr. Stroh's resignation from Saturna; and the effect of after-acquired evidence.

3. **Michael E. Lewis** will testify live. Mr. Lewis is the Chief Compliance Officer at Saturna. The general nature of his testimony will be Mr. Stroh's work at Saturna; Saturna management's interactions with Mr. Stroh and other members of Saturna's legal and compliance team; compliance issues (to the extent Mr. Stroh is allowed to present such evidence); Mr. Stroh's resignation from Saturna; and matters as to which Paul Meeks may testify and/or Mr. Meek's reliability as a witness.

4. **Jacob A. Stewart** will testify live. Mr. Stewart is the Anti-Money Laundering Officer at Saturna. The general nature of his testimony will be Mr. Stroh's work at Saturna; Saturna management's interactions with Mr. Stroh and other members of Saturna's legal and compliance team; compliance issues (to the extent Mr. Stroh is allowed to present such evidence); and Mr. Stroh's resignation from Saturna.

---

[2] Mr. Stroh has indicated that he intends to call Mr. Kaiser, Ms. Carten, Mr. Cain, and himself in his case in chief. Defendants request that full direct examination of those individuals be permitted at that time, to avoid burdening the court, the witnesses, and the jury with unnecessary or duplicative testimony. Mr. Stroh does not object.

PRETRIAL ORDER - 11
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

5.  **Adam Engst** may testify live. Mr. Engst is an attorney at GLP Attorneys and was formerly Associate Counsel at Saturna. The general nature of his testimony will be Mr. Stroh's work at Saturna; Saturna management's interactions with Mr. Stroh and other members of Saturna's legal and compliance team; compliance issues (to the extent Mr. Stroh is allowed to present such evidence); and Mr. Stroh's resignation from Saturna.

6.  **Christopher R. Fankhauser** may testify live. Mr. Fankhauser is Chief Operating Officer at Saturna. The general nature of his testimony will be Mr. Stroh's work at Saturna; Saturna management's interactions with Mr. Stroh and other members of Saturna's legal and compliance team; compliance issues (to the extent Mr. Stroh is allowed to present such evidence); and Mr. Stroh's resignation from Saturna.

7.  **Monem Salam** may testify live. Mr. Salam is the President and Executive Director of Saturna Sendarian Berhad (SSB). The general nature of his testimony will be Saturna and SSB's history and operations; compliance issues (to the extent Mr. Stroh is allowed to present such evidence); and Mr. Stroh's work at Saturna.

8.  **Dennis Murphy** may testify live. Mr. Murphy is the Non-Executive Director of Saturna. The general nature of his testimony will be Saturna's history and general operations; Mr. Stroh's work at Saturna; Saturna management's interactions with Mr. Stroh and other members of Saturna's legal and compliance team; and compliance issues (to the extent Mr. Stroh is allowed to present such evidence).

9.  **Jeffrey P. Fairchild** will testify live. Mr. Fairchild is an attorney at Adelstein, Sharpe, & Serka, LLP. The general nature of his testimony will be Mr. Stroh's resignation from Saturna.

10. **Ken Cain** may testify by deposition. The general nature of his testimony will be Mr. Stroh's work at Saturna; and Saturna management's interactions with Mr. Cain, Mr. Stroh, and other members of Saturna's legal and compliance team. Saturna designates the following excerpts of Mr. Cain's videotaped deposition: page 46, lines 1 through 9; page 49 line 4

PRETRIAL ORDER - 12
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

through page 50 line 4; page 53 lines 6 through 15, and page 65 line 22 through page 79 line 24. These are included in Addendum A.

A copy of the transcript shows in red highlighting the sections that Defendant intends to offer at trial. Plaintiff has not offered any objections to these sections. The red highlighted transcript of Ken Cain's video testimony is in attached Addendum A.

**11.   Norman Yee** will testify live. Mr. Yee is the Vice President and Chief Operating Officer of Celerity Consulting Group. The general nature of his testimony will be Saturna's investigation into the hard drive of Mr. Stroh's Saturna computer after Mr. Stroh's resignation.

**12.   Gordon Scott Stroh** will testify live. The general nature of his testimony will be Mr. Stroh's work at Saturna; Saturna management's interactions with Mr. Stroh and other members of Saturna's legal and compliance team; Mr. Stroh's resignation from Saturna; the matters on which Saturna's after-acquired evidence defense is based; and Mr. Stroh's failure to avoid or mitigate his damages.

Saturna reserves the right to call any witnesses identified by Mr. Stroh.

**B.   Expert Witnesses**

1.   **Robert A. Wagner**
MWL Advisory, LLC
901 Fifth Avenue, Suite 3320
Seattle, WA 98164

Mr. Wagner will testify live. The general nature of his testimony will be the flaws and problems with the expert opinions of Plaintiff's expert Mark Newton, and compensation damages, as outlined in his expert reports.

2.   **Sara J. Andres**
10044 NE 130th Lane, No. 2
Kirkland, WA 98034

Ms. Andres may testify live in the event that Defendants' motion to exclude the testimony of Plaintiff's expert, Mary Curran, is denied and Ms. Curran is permitted to testify. The general nature of Ms. Andres' testimony in that event will be the flaws and problems with

PRETRIAL ORDER - 13
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

the expert opinions of Plaintiff's expert Mary Curran, and compliance related matters, as outlined in her expert reports.

### Plaintiffs' Exhibits

Please see Addendum B for a list of Plaintiff's exhibits, Defendants' objections and Plaintiff's responses. Plaintiff will present exhibits in electronic format to jurors.

### Defendant's Exhibits

Please see Addendum C for a list of Defendants' exhibits with Plaintiff's objections. Defendants intend to present exhibits in electronic format.

### The Parties' Reservation of Rights

1. The parties reserve the right to supplement their exhibit lists in the event further discovery or expert witness testimony is received. The parties also reserve the right to add any exhibit not already listed that is included in any expert witness report or disclosure.

2. The parties reserve the right to supplement their exhibit lists as additional exhibits are identified in final preparations in accordance with the applicable local rules and orders of this Court.

3. The parties reserve the right to split any exhibit identified into multiple exhibits.

4. The parties reserve the right to offer any exhibit identified by the opposing party.

5. The parties reserve the right to withdraw or not offer any exhibit identified in Addendum A or B referenced above; inclusion of any exhibit above is not a waiver of any objection to the admissibility of such exhibit.

7. The parties reserve the right to call any witness identified by the opposing party.

Respectfully submitted,

DATED: June 2, 2017

PRETRIAL ORDER - 14
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

LANE POWELL PC

   *s/ Christopher B. Wells*
Christopher B. Wells, WSBA No. 08302
Claire L. Davis, WSBA No. 39812
Attorneys for Plaintiff Gordon Scott Stroh

Lane Powell PC
1420 Fifth Avenue, Suite 4200
Seattle, WA 98111-9402
Phone: 206-223-7000
Fax: 206-223-7107
Email: wellsc@lanepowell.com
         davisc@lanepowell.com

   *s/ Jeffrey B. Coopersmith*
Jeffrey B. Coopersmith, WSBA No. 30954
Brendan T. Mangan, WSBA No. 17231
Max B. Hensley, WSBA No. 47030
Rachel Herd, WSBA No. 50339
Attorneys for Defendants

DAVIS WRIGHT TREMAINE, LLP
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
Phone: 206-622-3150
Facsimile: 206-757-7700
Email: jeffcoopersmith@dwt.com
         brendanmangan@dwt.com
         maxhensley@dwt.com
         rachelherd@dwt.com

PRETRIAL ORDER - 15
CASE NO. 2:16-cv-00283-TSZ

128565.0001/6966730.1
4812-4736-1609v.3 0083307-000005

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

# ORDER

IT IS SO ORDERED

DATED this ____ day of June, 2017.

_____
Thomas S. Zilly
United States District Judge

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107